Taylor, P. J.
Empire Case Goods Workers Union brought this action on behalf of itself and a number of its members against Empire Case Goods Company, a corporation, herein *151 after called Empire, and Sidney G. Bose, doing business under the assumed name of Empire Case Goods, to recover so-called vacation pay. The action is based upon a contract between Empire and the union, which became effective May 17, 1944, wherein the union agreed not to call a threatened strike and Empire, among other things, agreed that all of its employees, who on July 1, 1944, had served for one year prior thereto, should be entitled to take the week of July 4,1944, as a vacation period with pay.
The complaint in substance alleges that plaintiff is duly authorized to represent Empire’s employees and to bring the action; that all of Empire’s employees who were entitled thereto under the contract took their vacations but have not been paid, and that defendant Bose, as purchaser of Empire’s properties and business, became liable for the vacation pay. Empire’s defense is that it sold its properties and business to defendant Bose and that Bose owned and operated the business from and after June 1, 1944. Bose’s defense is that he was not a party to the contract between Empire and the union, and has not assumed any liability thereunder. Both defendants admitted the validity of the contract and that its provisions became a part of Empire’s wage structure.
On stipulation of the parties, a jury trial was waived and a trial had at Special Term. The defendants made no objections in respect of the form or sufficiency of the complaint and stipulated that plaintiff was the real party in interest and entitled to bring the action, and to receive payment of any recovery. It was further stipulated that findings of fact need not be made and that if plaintiff recovered against one or both defendants, the judgment should be for $4,409.60, less social security and income taxes due the Federal Government.
At the close of the proofs, the Trial Judge reserved decision on defendants’ motions for directed verdicts, and thereafter filed his written decision directing judgment dismissing the complaint as against both defendants with costs. From the judgment entered thereon plaintiff appeals.
The undisputed facts as disclosed by the record are these: Four days after the vacation pay, provisions of the contract sued upon became effective, and on May 21,1944, the defendant Bose made Empire a written offer to purchase substantially all of Empire’s physical assets, together with trade names and good will, and to pay therefor the total amount as determined by the application of certain specified formulae. A deposit of $50,000 accompanying the offer was to be applied upon the purchase *152 price if the offer was accepted, and the balance paid upon completion of inventory, certificates of the accountants and delivery of title, which was to be not later than July 1, 1944. The offer contained other provisions of which only the following need be quoted:
“ 4. The entire transaction shall be closed as of June 1,1944. All deeds, bills of sale and other papers relating thereto shall be dated as of that date and I shall be entitled to possession and shall be deemed to be in possession of said premises from and after said June 1,1944, even though the final closing papers may not be delivered until after that date.” * * *
“ 7. After June 1, 1944, until the final closing of this transaction the business shall continue to be operated in the same manner that has previously prevailed, for my benefit and at my risk, except that no commitments shall be made without the approval of myself or my agent, T. L. Warschauer. No increases in salary and no payments of bonuses shall be made to any employee now employed by the company and no new employee shall be hired or engaged without the approval of myself or my agent, T. L. Warschauer.”
The transaction was closed on July 14, 1944, when Empire delivered the deeds, assignments and bills of sale conveying all of the assets specified in the sale agreement, and Rose paid Empire approximately $300,000, the balance of the purchase price. Meanwhile, those employees who had served in the plant for one year prior to July 1, 1944, took the week of July 4th, as a vacation period, without objection on the part of Empire’s president or any of its officers, but none received vacation pay. In the interim, between May 21st and July 14th, Empire’s plant continued in operation without change in management or personnel. As before, Mr. Anderson, Empire’s president and general manager directed the operation of the business, and to all outward appearances, represented no one but Empire. He signed the payroll checks, both before and after the vacation period, which as usual, were drawn upon Empire’s bank account. Empire gave no notice to its employees that it had terminated or intended to terminate the employer-employee relationship. While the union’s shop committee knew that some change might be impending, they were unable, on inquiry, to obtain any definite information concerning the matter. From June 1st to the closing of the transaction, Rose’s agent, one Warschauer, was in and about the plant but spent most of his time in the office. He issued no orders and gave no directions to employees.'
*153 With these facts before it, the Special Term held that by virtue of the above-quoted provisions of the sale agreement, Empire, from June 1,1944, until July 14,1944, operated the business as the agent and for the account of Bose; that in contemplation of law, on June 1st, Empire’s employees became the employees of Bose and ceased to be employees of Empire so that none were entitled to vacation pay from Empire.
Bose was held not to be liable upon the grounds that he was not a party to the union contract and had assumed no liability thereunder. On this appeal, the rights and liabilities as between Empire and Bose arising from their contract are not before us. We are concerned only with the question as to whether either or both defendants are liable to plaintiff and those whom it represents. Plaintiff contends that when Bose agreed to purchase Empire’s business, he impliedly assumed Empire’s wage structure. We~ find nothing in the record to support this contention and think that as to defendant Bose, the complaint was properly dismissed.
In respect to Empire’s liability, we take a different view. The employment here involved was for an indefinite term, terminable by either employer or employee at any time. Concededly, the vacation pay constituted wages which became due and payable on July 1st. Empire gave no notice of termination and the employees had no actual knowledge of the terms of the purchase offer. These employees were hired by Empire. Empire paid them and had the right to discharge them. It directed the work that they should do, and how it should be done. They received no orders from anyone other than Empire’s officers. Apparently, for business reasons, both Empire and Bose deemed it advisable to keep secret, so far as possible, the fact that an executory purchase and sale agreement had been entered into. Under these circumstances, application of familiar principles of the law of master and servant renders Empire liable for the vacation pay.
The rule particularly applicable to the facts in this case has been stated to be as follows: “ And where the master disposes of his business to another without notifying the servant of the change, and the latter continues his services thereafter, the master is liable for the servant’s wages so long as he remains without notice, but in case of contracts terminable at will, actual knowledge by the servant of the change of employers, however acquired, will release the employer.” (39 C. J., Master and Servant, § 69, p. 77.)
In Murray Union Railway Co. (229 N. Y. 110, 113), Judge Cabdozo, :in considering the employer-employee relation *154 ship, said: “ He is not chargeable with the legal consequences of the arrangement between the bureau and the railroad as actually made. He is chargeable only with the legal consequences of the arrangement as known and approved. Knowledge and approval may be inferred where the servant, continuing in the service, takes his orders from some one other than the hirer or the hirér’s representative. Here the hirer’s representative was, or seemed to be, in continuous authority.” While in that case, the defendant sought to defeat plaintiff’s common-law action for negligence upon the theory that plaintiff was its servant, the language used appears to be applicable here.
On the facts disclosed by this record, we hold that neither the union nor the employees had knowledge of the fact, if it be the fact, that by virtue of the sale agreement, Empire’s employees became the employees of Rose on June 1, 1944; that knowledge of the negotiations is not equivalent to knowledge of such a change and thus Empire is liable for the vacation pay.
In conclusion, it should be noted that the complaint herein was verified by Ralph A. Carouso, as president, hence the title of the action should be amended so that plaintiff-appellant reads: “ Ralph A. Carouso, as President of Empire Case Goods Workers Union suing on behalf of himself and the employees of the Empire Case Goods Company.”
The judgment insofar as it dismisses the complaint against Empire should be reversed, with costs, and judgment directed in favor of the plaintiff for the sum of $4,409.60, with costs; as to the defendant Rose, the judgment should be affirmed, without costs.
All concur. Present — Taylor, P. J., Dowling, Harris, McCtxrn, and Larkin-, JJ.
Title of the action amended so that the plaintiff-appellant reads: “ Ralph A. Carouso, as President of Empire Case Goods Workers Union suing on behalf of himself and the employees of the Empire Case Goods Company.” Appeal from judgment entered October 15, 1945, dismissed as academic. Judgment entered December 19,1945, insofar as it dismisses the complaint against defendant Rose affirmed, without costs, and insofar as it dismisses the complaint against defendant Empire Case Goods Company reversed on the law and judgment directed in favor of the plaintiff for the sum of $4,409.60, with interest from July 1, 1944, with costs.